UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

QUNINDALE POLK,                                                    REPORT
                                    Plaintiff,                        and
                         v.                                    RECOMMENDATION

CORRECTION OFFICER ANTHONY J. OLLES,                    12-CV-01106S(F)
CORRECTION OFFICER SEAN P. WHITE,
LIEUTENANT RICHARD E. SIMMONS, and
PAUL CHAPPIUS, JR., Deputy Superintendent
 of Security, individually,

                                    Defendants.
_____

APPEARANCES:            PARKER ROY MacKAY, ESQ.
                        Attorney for Plaintiff
                        3110 Delaware Avenue
                        Kenmore, New York  14217

                        ERIC T. SCHNEIDERMAN
                        NEW YORK STATE ATTORNEY GENERAL
                        Attorney for Defendants
                        STEPHANIE JOY CALHOUN
                        Assistant Attorney General, of Counsel
                        Main Place Tower
                        Suite 300A
                        350 Main Street
                        Buffalo, New York 14202

## JURISDICTION

        This case was referred to the undersigned by Honorable William M. Skretny on

April 8, 2014, for all pre-trial matters including preparation of a report and

recommendation on dispositive motions.  The matter is presently before the

undersigned on Defendants' motion for summary judgment (Doc. No. 32), filed March

31, 2015.

## BACKGROUND

On November 9, 2012, Plaintiff Quinndale Polk ("Plaintiff" or "Polk"), then proceeding *pro se*, commenced this civil rights action pursuant to 42 U.S.C. § 1983, alleging Defendants, employees of New York State Department of Corrections and Community Supervision ("DOCCS"), assigned to Attica Correctional Facility ("Attica" or "the correctional facility"), violated Plaintiff's constitutional rights on June 5, 2011, when they confiscated from Plaintiff legal papers related to Plaintiff's conviction during a search of Plaintiff's cell.  Defendants to this action include Corrections Officer Sgt. Anthony J. Olles ("Olles"), Corrections Officer Sean P. White ("White"), Corrections Officer Lieutenant Richard E. Simmons ("Simmons"), and Attica's Deputy Superintendent of Security Paul Chappius, Jr. ("Chappius") (together, "Defendants"). With leave of the court, Plaintiff filed an amended complaint on February 4, 2013 (Doc. No. 6), and June 12, 2013 (Doc. No. 8) ("Second Amended Complaint").  Plaintiff's claims include violations of the First Amendment rights to free speech, to petition the government for redress of grievances, and access to the court, the Fourth Amendment's protections against unreasonable searches and seizures, Fifth Amendment due process rights, the Sixth Amendment's right to a speedy trial, the Eighth Amendment's prohibition against cruel and unusual punishment, and the Fourteenth Amendment's rights to equal protection and due process.  Second Amended Complaint ¶¶ 33A-33B. Defendants' answer to the Second Amended Complaint was filed November 13, 2013 (Doc. No. 12).  On May 6, 2014, Plaintiff moved for appointment of counsel (Doc. No. 26), which was granted on June 16, 2014 (Doc. No. 27), with Parker R. MacKay, Esq., assigned to represent Plaintiff.

On March 31, 2015, Defendants filed the instant motion for summary judgment (Doc. No. 32) ("Defendants' motion"), supported by Defendants' Memorandum of Law in Support of Motion for Summary Judgment (Doc. No. 32-1) ("Defendants' Memorandum"), the Statement of Undisputed Facts (Doc. No. 32-2) ("Defendants' Statement of Facts"), the Declaration of Assistant Attorney General ("AAG") Stephanie Joy Calhoun ("Calhoun") (Doc. No. 32-3) ("Calhoun Declaration"), attaching exhibits A and B ("Calhoun Declaration Exh(s). __"), the Declaration of Paul Chappius (Doc. No. 32-4) ("Chappius Declaration"), attaching exhibits A through G ("Chappius Declaration Exh(s). __"), the Declaration of Anthony Olles (Doc. No. 32-5) ("Olles Declaration") ("Olles Declaration Exh(s). __"), the Declaration of Richard Simmons (Doc. No. 32-6) ("Simmons Declaration"), attaching exhibit A ("Simmons Declaration Exh. A"), and the Declaration of Sean White (Doc. No. 32-7) ("White Declaration"), attaching exhibits A and B ("White Declaration Exh(s). __").

In opposition to Plaintiff's motion, Defendants filed on June 25, 2015, the Declaration of Parker R. MacKay, Esq. (Doc. No. 36) ("MacKay Affidavit"), attaching exhibits A and B ("Plaintiff's Exh(s). __"), the Declaration of Quinndale R. Polk (Doc. No. 36-1) ("Plaintiff's Declaration"), Plaintiff's Counter-Statement of Facts in Opposition to Defendants' Motion for Summary Judgment (Doc. No. 36-2) ("Plaintiff's Statement of Facts"), and Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion (Doc. No. 36-3) ("Plaintiff's Memorandum").  In further support of summary judgment, Defendants filed on July 17, 2015, the Reply Declaration of AAG Stephanie Joy Calhoun (Doc. No. 37) ("Calhoun Reply Declaration").  Oral argument was deemed unnecessary.

Based on the following, Defendants' motion should be GRANTED.

## FACTS[1]

On June 5, 2011, Plaintiff Quinndale Polk ("Plaintiff" or "Polk"), while incarcerated in Attica Correctional Facility ("Attica" or "the correctional facility"), was subjected to a cell search performed by Defendant Olles at the behest of Defendant Simmons. Confiscated as contraband during the cell search were two black and white televisions and a "sangean radio,"[2] for which Plaintiff had not been issued a permit, two fake permits belonging to different inmates, and a "Noble Koran."  Olles Declaration ¶ 5 and Exh. A; Plaintiff's Declaration ¶ 14.  Plaintiff maintains Olles stated that particular version of the Koran included a section on Jihad and, thus, was confiscated as contraband.  Second Amended Complaint at 38; Plaintiff's Declaration ¶ 14.  Also found during the search were legal papers, including a substantially completed draft of a New York Criminal Procedure Law Article 440 post-conviction motion ("440 motion"), with only five to seven pages remaining to be typed.  Olles confiscated the legal material because, despite not reviewing the legal materials, he believed they might contain contraband and took the documents to the correctional facility's contraband office for examination by another corrections officer.  Plaintiff protested the confiscation because Olles had not determined whether the papers constituted contraband and would hinder Plaintiff's filing of his 440 motion.  Because Olles had not personally inspected the paperwork and thus was not sure whether any of the confiscated papers contained contraband, Olles did not list the bags of papers on the contraband receipt issued in

---

[1] Taken from the pleadings and motion papers filed in this action.
[2] A "sangean radio" is not further defined in the record.

connection with the cell search.  Subsequent to the cell search, Olles issued an inmate misbehavior report ("first misbehavior report"),[3] charging Plaintiff with violations of DOCCS Inmate Disciplinary Rules 113.23 (contraband), 116.12 (counterfeit documents), and 116.13 (stealing).

The confiscated papers were reviewed by Defendant White who observed on some of the papers the abbreviation "U.B.N."  which White understood referred to "United Blood Nation," a gang organization that has not been sanctioned by DOCCS. White further observed that on some of the papers, the letter "i" was dotted by a five-point star, which White also understood to be another reference to the United Blood Nation.  Accordingly, White, considering those documents containing references to the United Blood Nation as contraband, tagged and bagged the suspect documents, placing them in the contraband office, and filed a second inmate misbehavior report ("second misbehavior report"),[4] charging Plaintiff with violating DOCCS Inmate Disciplinary Rule 105.13 (possession of unauthorized organization materials) ("Rule 105.12").  The papers containing the contraband were ordered to be destroyed by DOCCS Lieutenant Borawski, and the remaining papers that were not deemed contraband, presumably relating to the 440 motion, were returned to the contraband office to be returned to Plaintiff.  Following a June 16, 2011 Tier III DOCSS inmate disciplinary hearing ("Tier III hearing") on the second misbehavior report, Plaintiff was found guilty of Rule 105.13 (gangs), for which the penalty imposed was six months in Attica's Special Housing Unit ("SHU"), and loss of recreation, packages, commissary, phone, and good time privileges.

---

[3] Olles Declaration Exh. A.
[4] White Declaration Exh. A.

On June 17, 2011, Attica's Deputy Superintendent for Security ("DSS") Chappius received an undated letter from Plaintiff ("June 17, 2011 Letter"),[5] explaining that on June 16, 2011, Plaintiff, after a Tier III hearing, had been found guilty of being in possession of gang-related material, and that Plaintiff's legal materials would be returned to him, but that Plaintiff had yet to receive the materials, the return of which Plaintiff also requested.  Plaintiff maintains that prior to the Tier III hearing, he never saw the purported gang-related materials and did not know how they came to be found among his legal materials.  On June 24, 2011, Plaintiff filed as an inmate grievance ("first inmate grievance"),[6] a letter to Attica Superintendent M. Bradt ("Bradt"), alleging that during the cell search, his legal papers and eyeglasses were wrongly confiscated and were not returned.

In a memorandum to DOCCS Lt. Polak ("Polak"), dated July 10, 2011 ("July 10, 2011 Memorandum"),[7] DOCCS Sgt. Markowski ("Markowski"), stated Plaintiff's allegations were unsupported by any evidence and that Plaintiff was attempting to file a false claim against the State.  By memorandum dated July 14, 2011 ("July 14, 2011, Memorandum"),[8] Chappius advised Plaintiff that his investigation of Plaintiff's first inmate grievance indicated that the bag of legal materials confiscated from Plaintiff during the cell search had been returned, and there was no indication that a pair of eyeglasses was ever taken from Plaintiff.

---

[5] Chappius Declaration Exh. B.
[6] White Declaration Exh. B.
[7] Chappius Declaration Exh. C.
[8] Chappius Declaration Exh. D.

In an inmate grievance dated July 15, 2011 ("second inmate grievance"),[9] Plaintiff challenged as false Chappius's assertion in the July 14, 2011, Memorandum that all of Plaintiff's confiscated legal documents had been returned, and also complained that Olles had taken Plaintiff's eyeglasses.  By memorandum to Chappius dated July 21, 2011 ("July 21, 2011, Memorandum"),[10] DOCCS Sergeant D. O'Connell ("O'Connell"), advised that all the contraband items found among Plaintiff's papers were destroyed, but the papers that were legal were given to the Crisis Intervention Unit ("CIU"), for review and then returned to Plaintiff.  In an Inmate Grievance Program ("IGP") memorandum dated July 26, 2011 ("IGP Memorandum"),[11] IGP Supervisor George D. Struebel ("Struebel"), advised Plaintiff that his first inmate grievance had been thoroughly investigated through the DSS office, that Plaintiff had been found guilty of possessing unauthorized group paperwork that was confiscated and destroyed, and the rest of Plaintiff's paperwork was returned to Plaintiff.  A Personal Property Transferred form ("Property Transfer form"),[12] dated August 27, 2011, used within the correctional facility whenever any inmate's items, including legal documents, are transferred to a new location so as to keep track of the items, indicated that a DOCCS officer attempted to return Plaintiff's property seized on June 5, 2011, but Plaintiff refused to sign the Property Transfer form to accept their return, asserting the legal papers were still missing.

On September 9, 2011, Plaintiff's Tier III hearing on the second misbehavior report finding Plaintiff guilty on the Rule 105.13 (possession of unauthorized

---

[9] Olles Declaration Exh. B.
[10] Chappius Declaration Exh. E.
[11] Chappius Declaration Exh. F.
[12] Chappius Declaration Exh. G.

organization materials) violation, was expunged based on the hearing officer's failure to

call White – the second misbehavior report's author – to testify, and because the

second misbehavior report failed to indicate the correct charged violation.  All sanctions

imposed at the hearing were removed and Plaintiff was released from SHU.  Plaintiff's

direct appeal of his criminal conviction was filed by appellate counsel on March 29,

2013.  To date, Plaintiff has not filed his 440 motion in which Plaintiff intended to raise

an ineffective assistance of trial counsel claim because Plaintiff maintains he lacks the

resources necessary to recreate the confiscated legal materials which were never

returned.  Plaintiff further maintains twelve manila folders and a large file folder of legal

materials taken during the June 5, 2011 cell search have never been returned.


## DISCUSSION

### 1.    Summary Judgment

Summary judgment of a claim or defense will be granted when a moving party

demonstrates that there are no genuine issues as to any material fact and that a moving

party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir.

2003).  The court is required to construe the evidence in the light most favorable to the

non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party

moving for summary judgment bears the burden of establishing the nonexistence of any

genuine issue of material fact and if there is any evidence in the record based upon any

source from which a reasonable inference in the non-moving party's favor may be

drawn, a moving party cannot obtain a summary judgment. *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Plaintiff's claims seeks damages for alleged violations of his constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who,

acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.  Section 1983, however, does not itself provide a source of substantive rights, but instead provides the mechanism by which a plaintiff may seek vindication of federal rights conferred elsewhere.  *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).  Here, Plaintiff's claims violations of his First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights. Although Defendants have moved for summary judgment on all Plaintiff's claims, Plaintiff's opposition to summary judgment is limited to his claims alleging violations of his First Amendment right of access to the courts, his Fifth and Fourteenth Amendment due process rights, and his Eighth Amendment right to be free from cruel and unusual punishment.  Plaintiff's Memorandum at 1.  Plaintiff, by declining to argue in opposition with regard to his First Amendment right free speech and petition claims, and his Fourth, Fifth and Sixth Amendment claims, has effectively conceded that Defendants are entitled to summary judgment on such claims which will not be further addressed. *See Ceglia v. Zuckerberg*, 2013 WL 1208558, at * 20 (W.D.N.Y. Mar. 26, 2013) ("Plaintiff, by failing to rebut this assertion, has thus acquiesced in it." (citing cases)), *report and recommendation adopted by* 2012 WL 1224574 (W.D.N.Y. Mar. 25, 2014), *aff'd*, 600 Fed.Appx. 34 (2d Cir. Apr. 20, 2015).  Alternatively, there is no § 1983 claim based on a random cell search, *Hudson v. Palmer*, 468 U.S. 517, 524 (1984) (considering random cell searches to be among the types of searches and seizures which do not violate an inmate's Fourth Amendment rights), nor on a violation of the Sixth Amendment rights to counsel, *Schick v. Apker*, 2009 WL 2016926, at * 2 (S.D.N.Y. July 10, 2009) ("While the Sixth Amendment guarantees criminal defendants

the right to effective assistance of counsel, it 'only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions.'" (quoting *Bourdon v. Loughren*, 386 F.3d 88, 96 (2d Cir. 2004))), or to a speedy trial.  *Morales v. Pallito*, 2012 WL 7748859, at * 1 (D.Vt. Dec. 18, 2012) ("The Speedy Trial Clause of the Sixth Amendment guarantees an accused person a right to a speedy trial.  This protection is inapplicable to civil proceedings." (citing *United States v. Marion*, 404 U.S. 307, 313 (1971))), *report and recommendation adopted by* 2013 WL 1089878 (D. Vt. Mar. 15, 2013).  The court thus considers only the arguments made with regard to Plaintiff's First Amendment right of access to the courts, his Fifth and Fourteenth Amendment due process rights, and his Eighth Amendment right to be free from cruel and unusual punishment.

Defendants argue in support of summary judgment that Plaintiff was not denied access to the courts, Defendants' Memorandum at 5-9, there is no merit to any assertion by Plaintiff that Defendants' actions were retaliatory in violation of the First Amendment, *id*. at 10-11, Plaintiff's due process rights were not violated by the random cell search, *id*. at 11-12, and Defendants are qualifiedly immune from liability for monetary damages on Plaintiff's claims.  *Id*. at 13-14.  In opposition to summary judgment, Plaintiff argues Defendants have failed to demonstrate the absence of material facts which, construed in Plaintiff's favor, could show that Defendants, by depriving Plaintiff of his legal materials, interfered with Plaintiff's ability to file his post-conviction 440 motion in a manner that complemented his direct appeal, Plaintiff's Memorandum at 1, that Plaintiff did not receive adequate pre- and post-privation due

process before his legal materials were destroyed, *id.*, and that Defendants' destruction of Plaintiff's legal materials was calculated and not in furtherance of any legitimate penological interest in violation of the Eighth Amendment.  *Id.* at 1-2.  In further support of summary judgment, Defendants argue none of the actions of which Plaintiff complains constitutes conduct that would hinder Plaintiff from pursuing any legal claim, Calhoun Reply Declaration ¶¶ 7, 9-10, and even if Defendants violated any state laws as to create a liberty interest for Fourteenth Amendment due process purposes, such violations do not rise to the level of a Federal constitutional due process injury cognizable under § 1983, *id.* ¶ 8, and Defendants' confiscation of Plaintiff's legal papers was supported by a valid penological interest  *Id.* ¶¶ 11-13.

## 2.    First Amendment

Plaintiff alleges Defendants' confiscation of his legal materials and subsequent failure to return them interfered with Plaintiff's ability to file his 440 motion challenging as ineffective his trial counsel's assistance, in violation of his First Amendment right of access to the courts.  Second Amended Complaint ¶¶ 33, 33A, 34, 34A, and 34B.  In support of summary judgment, Defendants argue that Plaintiff has failed to establish Defendants' actions resulted in any actual injury during his criminal appeals process as required to support a First Amendment access to courts claim.  Defendants' Memorandum at 5-9.  In opposition to summary judgment, Plaintiff argues that he has shown that Defendants' confiscation of his legal materials frustrated or impeded Plaintiff's filing of his 440 motion which is sufficient to avoid summary judgment. Plaintiff's Memorandum at 5-11.

It is settled that "meaningful access to the courts is the touchstone" of the First Amendment as regards litigation commenced by a prison inmate. *Bounds v. Smith*, 430 U.S. 817, 823 (1977) ("*Bounds*").  In particular, under *Bounds*, prison officials have an affirmative duty to provide constitutionally adequate access to the courts such that where an inmate alleges, *e.g.*, inadequate law libraries, or a prison official's interference with the physical filing of legal papers, the inmate need not show any actual injury. *Bounds*, 430 U.S. at 829.  Where, however, an inmate alleges denial of access to the courts based on some other claim, such as the actions of prison officials prevented him from meeting a filing deadline, "then the court must determine whether the prisoner has suffered an actual injury in a pending lawsuit." *Howard v. Leonardo*, 845 F.Supp. 943, 946 (N.D.N.Y. 1994) (granting defendant prison officials summary judgment on inmate plaintiff's First Amendment right of access to courts claim based on defendants' confiscation of the plaintiff's typewriter with knowledge the plaintiff's legal brief that had yet to be filed in further support of the plaintiff's habeas corpus petition was stored in the typewriter's memory).  "Further, a plaintiff alleging interference with his access to courts must have been without the opportunity to overcome the impediment before suffering the actual injury." *Odom v. Baker*, 2008 WL 281789, at * 5 (W.D.N.Y. Jan. 31, 2008) (citing *Howard*, 845 F.Supp. at 947).  "In other words, on a First Amendment access to courts claim, the challenged interference with a plaintiff's legal proceeding must be causally related to the plaintiff's inability to successfully prosecute such proceeding." *Id.* (citing *Jenkins v. United States*, 386 F.3d 415, 417 (2d Cir. 2004) (Article III standing requires causal connection between injury and conduct complained of that is likely to be redressed by favorable decision)).

Here, although Plaintiff maintains Defendants, despite being unaware whether his legal materials contained any contraband, confiscated the materials, destroying some of them for containing writings indicating gang activity, and failing to return others (assuming such documents were in fact tendered to Plaintiff but refused by Plaintiff as Defendants maintain), Plaintiff fails to specify exactly why the deprivation of such documents has rendered Plaintiff unable to file his 440 motion challenging as ineffective his trial counsel's assistance.  *See Odom*, 2008 WL 281789, at * 6 (dismissing for failing to state a claim inmate plaintiff's access to courts claim where the plaintiff failed to allege that but for the defendants' unlawful confiscation and destruction of his legal materials, he would have prevailed on his objections to an unfavorable Report and Recommendation recommending dismissal of his habeas corpus petition); *Smith v. O'Connor*, 901 F.Supp. 644, 649 (S.D.N.Y. 1995) (dismissing access to courts claim where inmate plaintiff failed to explain how destruction of his legal papers prejudiced his ability to seek redress from the judicial system and legal document was motion challenging criminal conviction for which there was no statute of limitations).  In the instant case, Plaintiff has not demonstrated any fact issues which, if decided in his favor, would establish that the confiscation of Plaintiff's legal materials, some of which were subsequently destroyed, resulted in any actual injury to Plaintiff; rather, "[a]t best, plaintiff's allegation that his 'law work' was destroyed supports the conclusion that he was temporarily inconvenienced by the loss of his papers."  *Smith*, 901 F.Supp. at 649. "While such inconvenience is understandably frustrating, it does not violate a constitutional right."  *Id.* (citing, *inter alia*, *Herrera v. Scully*, 815 F.Supp. 713, 725 (S.D.N.Y. (1993) ("A delay in being able to work on one's legal action or communicate

14

with the courts does not rise to the level of a constitutional violation.")).  *See also* *Livingston v. Goord*, 225 F.Supp.2d 321, 331 (W.D.N.Y. 2002) (granting defendant corrections officers summary judgment on inmate plaintiff's access to courts claim absent evidence that loss of legal materials allegedly taken by corrections officers materially prejudiced inmate plaintiff in some legal action), *aff'd in relevant part*, 153 Fed.Appx. 769 (2d Cir. Oct. 26, 2005).

In the instant case, the record fails to indicate, and Plaintiff does not explain how he knew the property that a corrections officer attempted to return to Plaintiff on August 27, 2011 were incomplete, nor does Plaintiff describe the documents he maintains were missing, how such documents were pertinent to any 440 motion claiming ineffective assistance of trial counsel, or why Plaintiff is unable to obtain copies of such documents from his appellate counsel.  That Plaintiff's direct appeal of his criminal conviction was not filed until March 29, 2013, establishes that his appellate counsel would have been in possession of Plaintiff's criminal trial file in which documents relevant to the 440 motion would have been located.  Moreover, until Plaintiff files an unsuccessful 440 motion, Plaintiff's assertion that Defendants' confiscation of his legal materials caused him actual injury is mere speculation.

Summary judgment on Plaintiff's First Amendment access to courts claim should be GRANTED in favor of Defendants.

**3.     Due Process**

Plaintiff claims he was denied due process[13] with regard to the deprivation of his legal materials.  Second Amended Complaint ¶¶ 33A, 34A, 35A, and 36A.  Defendants argue in support of summary judgment that the confiscation of Plaintiff's legal materials did not result in any atypical and significant hardship as required to sustain a due process claim.  Defendants' Memorandum at 11-12.  In opposition to summary judgment, Plaintiff maintains he was not afforded sufficient pre- and post-deprivation process to protect against the erroneous destruction of his legal materials.  Plaintiff's Memorandum at 11-13.  In further support of summary judgment, Defendants reiterate their arguments made in Defendants' Memorandum.  Calhoun Reply Declaration ¶ 2 n. 1.

Plaintiff does not point to any evidence that the confiscation interfered with Plaintiff's ability to contest his Tier III guilty verdicts.  To the extent that Plaintiff alleges he was deprived of his legal materials without due process of law, the claim must be dismissed because New York provides an adequate post-deprivation remedy for such a remedy.  *Hudson*, 468 U.S. at 533, *Jackson*, 256 F.3d at 96.  As relevant, the Supreme Court has held that even intentional destruction of an inmate's property will not support a constitutional claim if sufficient post-deprivation remedies are provided.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).   "New York in fact affords an adequate post-deprivation remedy in the form of, inter alia, a Court of Claims action."  *Jackson v. Burke*, 256 F.3d 93, 96 (2d Cir. 2001).  Here, Plaintiff's assertion in opposition to summary judgment that the Attica prison staff engaged in an "overly broad action" of "destroying <u>all</u> of Plaintiff's legal materials,"

---

[13] Although Plaintiff asserts both a Fifth and Fourteenth Amendment due process violation, as the Fifth Amendment has no applicability to this § 1983 action against state defendants, it need not be addressed. Plaintiff does not argue otherwise.

Plaintiff's Memorandum at 12 (underlining in original), is not supported by any description of what the missing legal materials included or why Plaintiff is certain they were not tendered to him by Defendants and, as such, constitutes a conclusory statement insufficient to support summary judgment.  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998) (holding party opposing summary judgment "may not rely on mere conclusory assertions or speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." (citing cases)). Furthermore, such conclusory assertion fails to explain why a Court of Claims action would not provide a sufficient post-deprivation remedy for the alleged destruction of Plaintiff's legal materials.  As such, because Plaintiff has access to adequate state law remedies, he has not been deprived of property without due process of law and his § 1983 claim fails.

Defendants' motion should thus be GRANTED as to Plaintiff's due process claims.

### 4.    Eighth Amendment

Plaintiff alleges that Defendants' conduct was in violation of the Eighth Amendment's prohibition against cruel and unusual punishment causing Plaintiff to suffer emotional distress, loss of sleep, depression, heightened anxiety, and rage. Second Amended Complaint ¶ 36B.  Although Defendants do not argue in support of summary judgment on Plaintiff's Eighth Amendment claim, *see* Defendants' Memorandum at 4 ("[P]laintiff alleges violation of his rights under the First, Fifth, Sixth and Fourteenth Amendments . . . ."), Plaintiff nevertheless argues in opposing summary judgment that because Olles did not review Plaintiff's legal materials prior to removing

17

them from Plaintiff's cell, Olles could not have known whether the papers contained contraband.  Plaintiff's Memorandum at 14.  Further, the only basis for Defendants' assertion that Plaintiff had any gang affiliations was Plaintiff's pre-sentence report pertaining to the criminal convictions for which Plaintiff is incarcerated, but which was irrelevant to the circumstances under which Plaintiff's cell was searched on June 5, 2011.  *Id.*  In further support of summary judgment, Defendants argue they had a valid penological interest in confiscating the documents based on the "gang material hidden" within the papers and Defendants' interest in maintaining a safe facility for the staff and inmates.  Calhoun Reply Declaration ¶¶ 11-12.

Inmates "enjoy Eighth Amendment protection from searches that lack any legitimate penological interest and are intended solely to harass."  *Lashley v. Wakefield*, 367 F.Supp.2d 461, 470 (W.D.N.Y. 2005) (citing *Nilsson v. Coughlin*, 1987 WL 12823, at * 4 (S.D.N.Y. June 18, 1987) ("a prisoner maintains the right under the Eighth Amendment to be free from searches which are unrelated to prison needs, but rather calculated to harass."), and *Moncrieffe v. Witbeck*, 200) WL 949457, at * 6 (N.D.N.Y. June 29, 2000) (same)).  Significantly, in *Lashley*, the inmate plaintiff relied on as evidence that each of the eleven searches of his cell conducted over a six-month period occurred soon after the plaintiff had engaged in constitutionally protected activities or engaged in confrontations with DOCCS employees, as well as that the searches were not conducted in accordance with relevant DOCCS directives because his cell was ransacked and some of his belongings were damaged, and none of the cell searches yielded any contraband or weapons, nor did the plaintiff ever receive any responses to the numerous grievances he filed regarding the cell searches.  *Id.*  In support of

summary judgment, the correctional facility's deputy superintendent filed an affidavit explaining that at maximum security correctional facilities, including the one in which the plaintiff was housed, random cell searches are conducted once or twice a month upon selection pursuant to a computer program, and such random searches are conducted to maintain discipline and security, and to search for weapons and contraband.  *Id.* at 470-71.  As in *Lashley*, the deputy superintendent had authorized the challenged cell searches as directed by the random computer program, *id.* at 471, and the court held the defendants had met their burden of proving the challenged cell searches were supported by legitimate penological reasons.  *Id.*

Similarly, in the instant case, Defendants have submitted the affidavit of DOCCS Lt. Simmons who explains that as Watch Commander on duty on June 5, 2011, he directed a search of Plaintiff's cell pursuant to DOCCS Directive 4910 ("Directive 4910")[14] which permits routine, random cell searches pursuant to a schedule issued by the Deputy Superintendent of Security, Directive 4910 § V.A.3, as well as unscheduled cell searches "when there is a reasonable suspicion that contraband is contained in the housing unit."  Directive 4910 § V.B.4.  Simmons Declaration ¶ 5.  Furthermore, although Plaintiff's guilty disposition on the second misbehavior report was expunged, Plaintiff has not challenged the confiscation of the two televisions and the radio for which he had no permit, the two permits found in his cell bearing the names of other inmates, and the noble Koran.  The confiscation of these unpermitted items strongly supports Defendants' assertion that the search of Plaintiff's cell was a random search intended to maintain the security of the correctional facility, staff and inmates, rather than to merely harass Plaintiff.  Significantly, Plaintiff offers only conclusory assertions

---

[14] A copy of Directive 4910 is filed as Simmons Declaration Exh. A.

in support of his position that the cell search was other than a routine random search, which statements are insufficient to avoid summary judgment. *D'Amico*, 132 F.3d at 149. Moreover, insofar as Plaintiff claims to have suffered from emotional distress attributed to Defendants' conduct, such claim must be supported by a physical injury. *See Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999) (stating the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*, requires a prior showing of physical injury when claiming emotional distress).

Defendants' motion should therefore be GRANTED as to Plaintiff's Eighth Amendment claim.

### 5.    Qualified Immunity

Defendants alternatively argue Defendants are qualifiedly immune from liability on Plaintiff's claims for monetary damages because their challenged actions were, at most, negligence which is insufficient to support a constitutional claim. Defendants' Memorandum at 13-14. Plaintiff argues in opposition that Defendants have failed to establish there are no material issues of fact which, if decided in Plaintiff's favor, would establish that Defendants' actions were more than mere negligence. Plaintiff's Memorandum at 15-16. The court addresses Defendants' qualified immunity argument only in the alternative should the District Judge disagree that summary judgment should be granted on Plaintiff's claims.

Qualified immunity shields law enforcement officials who perform discretionary functions from liability if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable prison official would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 806 (1982); *Washington Square Post No. 1212 v. Maduro*,

907 F.2d 1288, 1291 (2d Cir. 1990).  Even if the right at issue were clearly established,

if it was objectively reasonable for the defendant to believe that his act did not violate

the plaintiff's constitutional rights, the defendant may nevertheless be entitled to

qualified immunity.  *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *Lowth v. Town of*

*Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).  "The availability of the defense

depends on whether a reasonable officer could have believed his action to be lawful, in

light of clearly established law and the information he possessed."  *Weyant v. Okst*, 101

F.3d 845, 858 (2d Cir. 1996) (internal quotation marks and citation omitted).

In the instant case, the parties do not dispute that Plaintiff's constitutional right to

access to the courts was clearly established as of June 5, 2011, the date of the cell

search during which Plaintiff's legal materials were confiscated.  Whether Defendants

are entitled to qualified immunity, however, depends on whether their confiscation of

Plaintiff's legal materials was objectively reasonable.  Where, however, the objective

reasonableness of an officer's actions depends on disputed facts, as in the instant case

if the District Judge disagrees with the undersigned's recommendation that Defendants'

motion be granted, summary judgment based on qualified immunity is properly denied.

*Rivera v. United States*, 928 F.2d 592, 607 (2d Cir. 1991).  As such, the same material

issues of fact that would preclude summary judgment on Plaintiff's First Amendment

claim would also preclude summary judgment on Defendants' qualified immunity

defense.

## <u>CONCLUSION</u>

Based on the foregoing, Defendants' Motion (Doc. No. 32), should be

GRANTED; the Clerk of the Court should be directed to close the file.


Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      December <u>29</u>, 2015
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**

*Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        December 29, 2015
                   Buffalo, New York